ACCEPTED
01-15-00758-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/30/2015 5:59:44 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00758-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/30/2015 5:59:44 PM
CHRISTOPHER A. PRINE
Clerk

IN RE ADVANCED POWDER SOLUTIONS, INC.,
*Relator*.

Original Proceeding from Cause No. 2014-16020
In the 125th Judicial District Court of Harris County, Texas
The Honorable Kyle Carter, Presiding

RESPONSE TO PETITION FOR WRIT OF MANDAMUS

KURT B. ARNOLD
SBN: 24036150
karnold@arnolditkin.com
J. KYLE FINDLEY
SBN: 24076382
kfindley@arnolditkin.com
KALA SELLERS
SBN: 24087519
ksellers@arnolditkin.com
ARNOLD & ITKIN LLP
6009 Memorial Drive
Houston, Texas 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

ATTORNEYS FOR REAL PARTY IN INTEREST,
TREMAINE HEWITT

**IDENTITY OF PARTIES AND COUNSEL**

In addition to the counsel identified in the Petition for Writ of Mandamus, please note the appearance of additional counsel for the Real Party in Interest:

Kala Flittner Sellers
SBN: 24087519
ksellers@arnolditkin.com
ARNOLD & ITKIN LLP
6009 Memorial Dr.
Houston, TX 77007
Telephone: (713) 222-3800
Facsimile: (713) 222-3850

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES AND COUNSEL ....................................................................... i

TABLE OF CONTENTS ........................................................................................... ii

INDEX OF AUTHORITIES......................................................................................... iiv

ISSUES PRESENTED ............................................................................................... vii

INTRODUCTION......................................................................................................1

STATEMENT OF FACTS............................................................................................3

ARGUMENT ..........................................................................................................6

I.       Applicable Legal Standards...........................................................................6

         A.       Mandamus .........................................................................................6

         B.       Abuse of Discretion...........................................................................6

         C.       Compelled Independent Medical Examinations ...................................8

II.      The trial court properly exercised its discretion when it denied APS's
         motion to compel both an independent medical examination and a
         functional capacity evaluation. ...................................................................10

         A.       APS did not provide the trial court with evidence that an
                  independent medical examination or functional capacity
                  evaluation would provide relevant, discoverable evidence. ...............13

         B.       While there may be a nexus between Plaintiff's injuries and an
                  independent medical examination, this prong alone is
                  insufficient to support a finding that the trial court abused its
                  discretion. .......................................................................................14

C. APS must seek to obtain the desired information through less intrusive forms of discovery before resorting to a compelled medical examination ....................................................................155

    1. Compelled medical examinations intrude on the injured party's privacy ........................................................18

    2. APS did not provide the trial court with any indication of what it was looking for that could not be determined through less intrusive discovery. ............................................20

    3. Good cause is always required before a court orders an independent medical examination. ...........................22

D. APS failed at the trial court level, as well as in their writ for mandamus, to show they are entitled to a functional capacity exam and the trial court's denial of such was an abuse of discretion ......................................................................26

E. Even *Ten Hagen*—the sole case cited by APS in its motion to compel—supports the trial court's decision.....................................267

F. Any arguments made regarding Plaintiff's economist Kenneth McCoin are irrelevant and misguided. .............................................299

CONCLUSION .................................................................................................31

PRAYER FOR RELIEF.......................................................................................31

CERTIFICATE OF SERVICE...............................................................................33

CERTIFICATE OF COMPLIANCE ......................................................................344

APPENDIX......................................................................................................35

# INDEX OF AUTHORITIES

**CASES**                                                                   **PAGE(S)**

*Acosta v. Tenneco Oil Co.*,
   913 F.2d 205 (5th Cir. 1990) .................................................................25

*Coates v. Whittington*,
   758 S.W.2d 749 (Tex. 1988) .............................................................passim

*CSR Ltd. v. Link*,
   925 S.W.2d 591 (Tex. 1996) ...................................................................6

*Diaz v. Con-Way Truckload, Inc.*,
   279 F.R.D. 412 (S.D. Tex. 2012) ...........................................................24

*Gavin v. Hilton Worldwide, Inc.*,
   291 F.R.D. 161 (N.D. Cal. 2013) ...........................................................23

*Ginsberg v. Fifth Court of Appeals*,
   686 S.W.2d 105 (Tex. 1985) ...................................................................6

*Hardy v. Riser*,
   309 F. Supp. 1234 (N.D. Miss. 1970) .....................................................12

*IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*,
   938 S.W.2d 440 (Tex. 1997) .............................................................7, 20

*In re Bell Hot Shot Co.*,
   No. 14–13–00877–CV, 2014 WL 260116
   (Tex. App.—Houston [14th Dist.] Jan. 9, 2014, orig. proceeding)
   (mem. op.).................................................................................16, 18, 24

*In re Buch*,
   05-98-01665-CV, 1998 WL 908843
   (Tex. App.—Dallas Dec. 31, 1998, no pet.)..........................................15, 18

*In re Caballero*,
   36 S.W.3d 143 (Tex. App.—Corpus Christi 2000, orig.
   proceeding) .......................................................................9, 11, 14, 16, 25

*In re Cerberus Capital Mgmt., L.P.*,
　164 S.W.3d 379 (Tex. 2005) ..........................................................................7

*In re Click*,
　442 S.W.3d 487
　(Tex. App.—Corpus Christi 2014, orig. proceeding)....................9, 11, 14, 18

*In re Commitment of Hatchell*,
　343 S.W.3d 560 (Tex. App.—Beaumont 2011, orig. proceeding) .................8

*In re CSX Corp.*,
　124 S.W.3d 149 (Tex. 2003) ..........................................................................6

*In re Dallas Group of Am., Inc.*,
　434 S.W.3d 647 (Tex. App.—Houston [1st Dist.] 2014, no pet.)...............6, 8

*In re H.E.B. Grocery Co., L.P.*,
　13-15-00254-CV, 2015 WL 3637775
　(Tex. App.—Corpus Christi June 11, 2015, no pet.)...............6, 7, 8, 9, 18, 20

*In re Lambdin*,
　No. 07–03–0328–CV, 2003 WL 21981975
　(Tex. App.—Amarillo Aug. 20, 2003, orig. proceeding)...............................12

*In re Le*,
　335 S.W.3d 808 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ..........7, 20

*In re Odyssey Healthcare, Inc.*,
　310 S.W.3d 419 (Tex. 2010) ..........................................................................6

*In re Prudential Ins. Co. of Am.*,
　148 S.W.3d 124 (Tex. 2004) ..........................................................................6

*In re Sanders*,
　153 S.W.3d 54 (Tex. 2004) ............................................................................7

*In re Ten Hagen Excavating, Inc.*,
　435 S.W.3d 859 (Tex. App.—Dallas 2014, no pet.) ..............................passim

*In re Thuesen*,
    14-13-00174-CV, 2013 WL 1461790
    (Tex. App.—Houston [14th Dist.] Apr. 11, 2013, no pet.) ..................7, 17, 24

*In re Transwestern Publ'g Co.*,
    96 S.W.3d 501
    (Tex. App.—Fort Worth 2002, orig. proceeding) .........................9, 11, 14, 22

*Marroni v. Matey*,
    82 F.R.D. 371 (E.D. Pa. 1979) ......................................................................16

*Moore v. Calavar Corp.*,
    142 F.R.D. 134 (W.D. La. 1992).....................................................................25

*Sadler v. Acker*,
    263 F.R.D. 333 (M.D. La. 2009) ....................................................................23

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964)................................................................................passim

*Sherwood Lane Associates v. O'Neill*,
    782 S.W.2d 942 (Tex. App.—Houston [1st Dist.] 1990, no writ) ................23

*Stinchcomb v. United States*,
    132 F.R.D. 29 (E.D. Pa. 1990) ......................................................................12

*Storms v. Lowe's Home Centers, Inc.*,
    211 F.R.D. 296 (W.D. Va. 2002) .............................................................29, 30

*Teche Lines v. Boyette*,
    111 F.2d 579 (5th Cir. Miss. 1940) ...............................................................12

*Walker v. Packer*,
    827 S.W.2d 833 (Tex. 1992) ...........................................................................6

**STATUTES AND RULES**

Tex. R. App. P. 52.3(k)(1) ...................................................................................20

Tex. R. Civ. P. 204.1..............................................................................1, 8, 10, 11

## ISSUES PRESENTED

1.  Good cause is required to compel an independent medical examination. To show good cause, the movant must seek the desired information through less intrusive means before compelling an examination. Plaintiff disclosed his medical records, a list of treating physicians, and reports from expert witnesses; however, APS did not show any good cause and had not deposed Plaintiff's treating physicians or any experts, or provided any evidence to the trial court that it exhausted less intrusive means of discovery before moving to compel. ***Was it within the trial court's broad discretion to deny APS's motion to compel both an independent medical exam and a functional capacity exam?***

2.  ***Was APS legally entitled to compel Hewitt to submit to a functional capacity exam?***

## INTRODUCTION

Near the inception of discovery and before any depositions were taken, Relator, Advanced Powder Solutions, Inc. ("APS") demanded that Real Party in Interest, Tremaine Hewitt, undergo both an independent medical examination as well as a functional capacity evaluation by two of APS's experts. Because courts protect an individual's right to privacy, before a party can be compelled to undergo a medical examination—or in this case, both a medical examination and a functional capacity evaluation—the party requesting that examination must show "good cause." Tex. R. Civ. P. 204.1; *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988). In order to satisfy the good cause standard, a party seeking the examination must show, among other things, that the information sought cannot be obtained through means that are less intrusive than the compelled examination. *Coates*, 758 S.W.2d at 753. APS did not attempt to show that it could not obtain information through less intrusive means, but rather, argued to the trial court as it does to this court, that good cause exists because "[t]here is nothing equitable about allowing one party's expert access to evidence while denying that opportunity to the other party." Pet. for Mandamus, 4. This argument misses the point entirely, and fails to show any aspect of good cause.

In order for APS to prevail here, it must establish that the trial court's decision to deny its motion to compel was an ***abuse of discretion***. This is a heavy

1

burden that APS cannot meet, especially in light of the fact that APS's failure to show good cause and only evidence to the trial court was a four-page motion citing only a single, non-binding case from the Dallas Court of Appeals. MR67-70.

Additionally, APS's arguments below and on mandamus are simply conclusory allegations by the attorney. APS provides no evidence of why its experts cannot opine without an independent medical examination and a functional capacity exam—as most defense experts do. Thus, the trial court's decision to deny APS's motion to compel was proper because APS provided the trial court with no evidence to support its motion, and undeniably failed to show good cause. Further, APS has failed to provide case law showing that it was entitled to compel a functional capacity exam.

## STATEMENT OF FACTS

This case arises from a serious accident which occurred on August 28, 2013, wherein Tremaine Hewitt was working as an employee of APS. App. 1: Pl.'s First Am. Pet., ¶ 9. Hewitt was required to stand on a ladder in order to pour magnesium powder into a reactor. *Id.* While Hewitt was on the ladder, another APS employee manipulated the reactor valves, which in turn caused a magnesium flash, knocking Hewitt off the ladder and setting him on fire. *Id.* Hewitt was burned severely, sustaining second and third degree burns over more than 22% of his body, as well as orthopedic injuries. *Id.*; *see also* MR58-63 (photographs of Hewitt's burn injuries). Because of his injuries, Hewitt was eventually life-flighted from the hospital to a burn unit, and underwent multiple surgeries while spending twenty-nine days in the hospital. *Id.*

On March 20, 2015, Hewitt disclosed to APS that, among others, Angel Roman, M.D. and Kenneth McCoin, Ph.D. would testify as experts in this matter. MR7-8. Included in this disclosure was a 47-page report from Dr. Roman. MR11-63. Dr. Roman's report also contained a detailed 12-page summary of Hewitt's medical records. MR18-30. In the same disclosure, Hewitt also provided Mr. McCoin's report, an economist. MR64-66. McCoin's report dealt only with Hewitt's earning capacity (both past and future). MR64. Nowhere in McCoin's

report did McCoin state that his observations or conclusions were based on an in-person examination of Hewitt. MR64-66.

Despite Hewitt's disclosures and without deposing any treating physicians or either expert, on May 7, 2015, APS moved to submit Hewitt to both an independent medical examination as well as a functional capacity evaluation. MR67-68. Mr. Hewitt received treatment from numerous healthcare providers as a result of his injuries. Before attempting to depose any of these doctors to ascertain information concerning Mr. Hewitt's medical condition, APS filed a motion with the trial court demanding that Mr. Hewitt undergo an independent medical examination ("IME") as well as a functional capacity evaluation ("FCE").

Additionally, to date, APS has not deposed Dr. Roman nor Mr. McCoin. Thus, Hewitt objected to APS's requested IME and the FCE, because APS did not seek less-intrusive means of obtaining information about Hewitt's medical condition prior to seeking to compel Hewitt to submit to these examinations as is required by Texas law. Further, Hewitt argued APS failed to show it was legally entitled to an FCE.

Given, among other things, the early state of the case, the trial court had no indication that APS had complied with its obligation to first seek less intrusive means of obtaining medical information. Thus, the trial court reviewed the request

4

for both an IME and a FCE and denied the requests. MR190. APS then filed the pending petition for a writ of mandamus.

It should be noted that in its writ for mandamus review, APS addresses issues surrounding alleged entitlement to an IME. APS fails to fully address that it moved the trial court for an IME and FCE. APS does not provide any case law to support that it is legally entitled to an FCE, because it cannot. APS cannot single out its request for the IME alone for analysis of an abuse of discretion. These were not separate motions, but a single request coupling both exams together as "physical examinations." MR67-70. This request, which was denied is the basis of this mandamus proceeding.

## I. Applicable Legal Standards

### A. Mandamus

"Mandamus relief is available when a trial court has committed an abuse of its discretion for which there is no adequate remedy by appeal." *In re Dallas Group of Am., Inc.*, 434 S.W.3d 647, 650 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010)). *See also In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 863 (Tex. App.—Dallas 2014, no pet.) (citing *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex. 1996)) ("Mandamus is an extraordinary remedy that is available only in limited circumstances."); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (same); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (same); *In re H.E.B. Grocery Co., L.P.*, 13-15-00254-CV, 2015 WL 3637775, at *1 (Tex. App.—Corpus Christi June 11, 2015, no pet.) (same). Additionally, the "heavy burden" lies with the relator to establish both that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003).

### B. Abuse of Discretion

"The scope of discovery largely rests within the discretion of the trial court." *Ten Hagen*, 435 S.W.3d at 865 (citing *Ginsberg v. Fifth Court of Appeals*, 686

S.W.2d 105, 108 (Tex. 1985)). Thus, a trial court only "clearly abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law, or if it clearly fails to analyze the law correctly or apply the law correctly to the facts." *H.E.B. Grocery*, 2015 WL 3637775, at \*1 (citing *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005)). *See also In re Thuesen*, 14-13-00174-CV, 2013 WL 1461790, at \*2 (Tex. App.— Houston [14th Dist.] Apr. 11, 2013, no pet.) (same).

Additionally, "[a] trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports the trial court's decision." *In re Le*, 335 S.W.3d 808, 813 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 445 (Tex. 1997)). Thus, "In determining whether the trial court clearly abused its discretion, [the reviewing court] may not substitute [its] judgment for that of the trial court." *Id.* (citing *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004)). *See also Thuesen*, 2013 WL 1461790, at \*2 ("When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters committed to the trial court's discretion."); *Ten Hagen*, 435 S.W.3d at 865 ("In considering whether a trial court has clearly abused its discretion with regard to a discovery order, the reviewing court may not substitute its judgment for that of the trial court.").

In other words, "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Walker*, 827 S.W.2d at 839–40. Instead, the "relator must establish that the trial court could reasonably have reached only one decision." *Ten Hagen*, 435 S.W.3d at 866.

## C. Compelled Independent Medical Examinations

"Rule 204.1(c) of the Texas Rules of Civil Procedure does not grant an automatic right to obtain a physical or mental examination."[1] *Ten Hagen*, 435 S.W.3d at 866. Instead, "there must be greater showing of need to obtain a physical or mental examination than to obtain other sorts of discovery." *Id.* (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)); *see also H.E.B. Grocery*, 2015 WL 3637775, at *3 (same).

Thus, to compel an independent examination, "[t]he party seeking the examination must show both (1) good cause and (2) that the mental or physical condition of a party is in controversy." *H.E.B. Grocery*, 2015 WL 3637775, at *2 (citing Tex. R. Civ. P. 204.1(c)(1); *Coates*, 758 S.W.2d at 752; *Ten Hagen*, 435 S.W.3d at 866; *In re Dallas Group*, 434 S.W.3d at 651; *In re Commitment of Hatchell*, 343 S.W.3d 560, 562-63 (Tex. App.—Beaumont 2011, orig. proceeding)). "These requirements may not be met with 'conclusory allegations' in

---

[1] Clearly APS's contention that motions to compel a physical examination are routine is erroneous and misleading. *See* Pet. for Mandamus, 4.

8

the movant's pleadings or by "mere relevance to the case." *Id.* (citing *Coates*, 758 S.W.2d at 751; *In re Click*, 442 S.W.3d 487, 491 (Tex. App.—Corpus Christi 2014, orig. proceeding); *In re Transwestern Publ'g Co.*, 96 S.W.3d 501, 505 (Tex. App.—Fort Worth 2002, orig. proceeding)).

"The 'good cause' element requires a balancing of the competing interests of the party's right of privacy and the movant's right to a fair trial." *H.E.B. Grocery*, 2015 WL 3637775, at *3 (citing *Coates*, 758 S.W.2d at 753; *In re Click*, 442 S.W.3d at 491). *Coates*—the leading Texas Supreme Court opinion on this issue—lays forth the following three prongs that must be satisfied to show good cause: (1) the examination is relevant to issues that are genuinely in controversy in the case and the examination would produce, or would likely lead to, relevant evidence; (2) a reasonable nexus exists between the condition in controversy and the examination sought; and (3) it is not possible to obtain the desired information through means that are less intrusive than a compelled examination. *Coates*, 758 S.W.2d at 751. *See also In re Transwestern Publ'g*, 96 S.W.3d at 505; *In re Caballero*, 36 S.W.3d 143, 144 (Tex. App.—Corpus Christi 2000, orig. proceeding). Thus, "the 'good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule.'" *Ten Hagen*, 435 S.W.3d at 868 (quoting *Schlagenhauf*, 379 U.S. at 117-18).

While Texas case law is somewhat sparse when it comes to Rule 204.1, federal cases provide helpful analysis. *Ten Hagen*, 435 S.W.3d at 868 n.1 (citing *Coates*, 758 S.W.2d at 751) ("The Texas Supreme Court has concluded that because the Texas rule governing mental and physical examinations was originally derived from Rule 35 of the Federal Rules of Civil Procedure, federal courts' construction of Rule 35 is helpful to an analysis of the Texas rule."). Thus, federal decisions will be referenced throughout this response.

## II.	The trial court properly exercised its discretion when it denied APS's motion to compel both an independent medical examination and a functional capacity evaluation.

The central issue on mandamus is whether the trial court abused its discretion when it denied APS's motion to compel examination requested by APS which included an IME coupled with a FCE. Plaintiff argued below, and does so again, that an IME should be denied because APS has failed to show good cause, and that APS was not entitled to a FCE. Thus, Plaintiff will not address whether his injuries are in controversy. But as this Court is aware, even if a party's injuries are in controversy, this alone is not "enough to compel a physical examination under Rule 204.1. Rule 204.1 also requires that the trial court find 'good cause' for the examination." *Ten Hagen*, 435 S.W.3d at 867 (citing Tex. R. Civ. P. 204.1(c)).

"The 'in controversy' and 'good cause' requirements imposed by Rule 204.1 are the tools courts use in balancing the respective rights of the parties to privacy

and to a fair trial." *Id.* But "these two requirements are not met 'by mere conclusory allegations of the pleadings-nor by mere relevance to the case.'" *Id.* (quoting *Coates*, 758 S.W.2d at 751); *see also Schlagenhauf*, 379 U.S. at 117-18.

This is precisely where APS failed. While whether or not Plaintiff's injuries are "in controversy" has not been contested, APS failed to meet its "affirmative burden" to prove to the Trial court that "good cause" exists to perform not only one, but two independent examinations. *See* Tex. R. Civ. P. 204.1(c); *Coates*, 758 S.W.2d at 751. "In the absence of an affirmative showing of both prongs of the test, a trial court may not order an examination." *Ten Hagen*, 435 S.W.3d at 866 (citing *Coates*, 758 S.W.2d at 751). Thus, the Trial court did not abuse its discretion because APS did not make an affirmative showing of "good cause."

As mentioned above, the following three prongs must be satisfied to show good cause: (1) the examination is relevant to issues that are genuinely in controversy in the case and the examination would produce, or would likely lead to, relevant evidence; (2) a reasonable nexus exists between the condition in controversy and the examination sought; and (3) it is not possible to obtain the desired information through means that are less intrusive than a compelled examination. *Coates*, 758 S.W.2d at 751. *See also In re Transwestern Publ'g*, 96 S.W.3d at 505; *In re Caballero*, 36 S.W.3d at 144; *In re Click*, 442 S.W.3d at 491.

Here, while APS never showed to the trial court what relevant evidence would come from the examinations sought, more importantly—and dispositive both here and to the Trial court—is the fact that APS has not shown the court it is impossible to obtain the desired information through less intrusive means. In fact, APS had not deposed any of Plaintiff's treating physicians or experts. This fact alone establishes that the trial court did not abuse its discretion.

But even if this Court disagrees, the trial court still has the discretion to deny an independent medical examination even when good cause is established. *See Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D. Pa. 1990) ("Even when good cause is shown, whether to order a proposed examination is committed to the discretion of the court."); *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970) (citing *Teche Lines v. Boyette*, 111 F.2d 579 (5th Cir. Miss. 1940)) ("Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination.").

Even *Ten Hagen*—the sole case APS relied on in its motion to compel—acknowledges that "the ordinary meaning of the language of Rule 204.1 suggests that the trial court is vested with discretion in determining whether to grant a physical or mental examination under Rule 204.1." *Ten Hagen*, 435 S.W.3d at 866. *See also In re Lambdin*, No. 07–03–0328–CV, 2003 WL 21981975, at *4 (Tex. App.—Amarillo Aug. 20, 2003, orig. proceeding) ("It is logical to construe the

word 'may' as vesting the trial court with some range of permissiveness or discretion.").

Thus, APS made no persuasive argument to the Trial court—and no persuasive argument here—to justify an independent medical examination, let alone establish that the trial court abused its discretion.

## A. APS did not provide the trial court with evidence that an independent medical examination or functional capacity evaluation would provide relevant, discoverable evidence.

APS never once showed the trial court what relevant evidence it hoped to gain from forcing Plaintiff to submit to an IME or FCE. In fact, the only arguments APS made were (1) "As the examinations sought by Defendant are not intrusive, invasive, or unnecessarily physically uncomfortable, they should be allowed," and (2) "To hold otherwise would deprive Defendant the right to explore and develop evidence that supports theories that contradict the theories espoused by Plaintiff's retained experts and thus, deprive Defendant the right to a fair trial." MR70.

These statements are nothing more than "mere conclusory allegations" and do not establish this first prong. *Ten Hagen*, 435 S.W.3d at 867 (quoting *Coates*, 758 S.W.2d at 751) (holding that good cause is "not met 'by mere conclusory allegations of the pleadings-nor by mere relevance to the case.'"); *see also Schlagenhauf*, 379 U.S. at 117-18. Thus, the trial court was well within its discretion to deny APS's motion to compel.

But even if this Court believes that APS satisfied the first prong, the trial court still did not abuse its discretion because "[a] court is not required or even permitted to order an examination simply because it finds the examination will produce relevant evidence." *Ten Hagen*, 435 S.W.3d at 869 (citing *Schlagenhauf*, 379 U.S. at 117-18). Additionally, "[t]he 'good cause' requirement of Rule 204.1 would be meaningless if mere relevance alone sufficed to establish good cause." *Id.* (citing *Schlagenhauf*, 379 U.S. at 117-18).

**B.      While there may be a nexus between Plaintiff's injuries and an independent medical examination, this prong alone is insufficient to support a finding that the trial court abused its discretion.**

Similarly, APS's nexus arguments are equally illogical. For example, APS states that "it is no surprise that Plaintiff" did not challenge the relevant evidence prong and the nexus prong. Pet. for Mandamus, 6-7. This statement misses the point. It does not matter whether or not APS can prove relevant evidence or nexus if it cannot show it could not obtain desired information through less intrusive forms of discovery. *See Coates*, 758 S.W.2d at 751 (all three prongs required to show good cause); *In re Transwestern Publ'g Co.*, 96 S.W.3d at 505 (same); *In re Caballero*, 36 S.W.3d at 144 (same); *In re Click*, 442 S.W.3d at 491 (same).

To put it simply, the test for good cause isn't a 1 out of 3 test, it isn't even a 2 out of 3 test. To show good cause, APS had to show the trial court that it satisfied

14

all three prongs. It didn't do so in its motion to compel, and it didn't do so here on mandamus. Thus, the trial court was within its discretion to deny APS's motion.

**C.      APS must seek to obtain the desired information through less intrusive forms of discovery before resorting to a compelled medical examination.**

Plaintiff argued in his response to APS's motion to compel that APS must seek the desired information through less intrusive forms of discovery before the trial court could grant APS's motion. MR140 ("The same information sought by Defendant in its proposed examinations can be obtained through less intrusive means," and "Defendant's experts are free to review the testing and medical records utilized by Plaintiff's physicians in forming their opinions and diagnoses and conduct their own interpretations.").

Exhausting less intrusive discovery methods to obtain the desired information is a well-established prong of the good cause analysis. "The final element of good cause requires that it not be possible to obtain the information sought by less intrusive means and that absent the examination the relator will not be able to obtain a fair trial." *Ten Hagen*, 435 S.W.3d at 869 (citing *In re Buch*, 05-98-01665-CV, 1998 WL 908843, at *3 (Tex. App.—Dallas Dec. 31, 1998, no pet.). *See also* MR69 (APS acknowledging it must show the trial court that it is not possible to obtain the same information through less intrusive means).

Additionally, *Ten Hagen*—the only case APS cited to in its motion to compel—lists numerous other discovery methods that Texas courts have identified that are less intrusive means of seeking the desired information. For example, "deposing the opposing party's doctors and attempting to obtain copies of medical records." 435 S.W.3d at 870 (citing *In re Caballero*, 36 S.W.3d at 145). The movant may also rely "on existing expert witness reports already filed in the case," as most defense experts do. *Id.* (citing *In re Bell Hot Shot Co.*, No. 14–13–00877–CV, 2014 WL 260116, at *2 (Tex. App.—Houston [14th Dist.] Jan. 9, 2014, orig. proceeding) (mem. op.)).

Likewise, in *Marroni v. Matey*, plaintiffs sought an independent examination of the defendant. 82 F.R.D. 371, 372 (E.D. Pa. 1979). The court noted that "[o]ne factor that is relevant to the determination of 'good cause' is the possibility of obtaining the desired information by other means." *Id.* (citing *Schlagenhauf*, 379 U.S. at 118). The court denied the plaintiffs' request for independent examination because the "[p]laintiffs have made no showing that the information they seek cannot be obtained by other discovery techniques." *Id.* The court went on to state they it must deny the motion "[u]ntil other methods are attempted," and that the defendant's "privacy interests require, at a minimum, that less intrusive methods of discovery first be explored." *Id.*

Similarly, in *In re Thuesen*, the court acknowledged that the relator was "entitled to seek discovery from their identified medical providers." 2013 WL 1461790, at *3. However, the court held that the relator "ha[d] not established that discovery from the identified medical professional will be insufficient," and that "[t]he privacy interests of the real party plaintiffs require[d] relator to exhaust less intrusive means of discovery before seeking compulsory mental examinations." *Id.* (citing *Coates*, 758 S.W.2d at 753).

Here, in light of the well-settled case law in this area, APS understandably failed to show the trial court that it exhausted less intrusive discovery measures because APS had not deposed Plaintiff's treating physicians, and has still not deposed Plaintiff's experts. Additionally, APS gave no reason why the medical records and expert reports provided are inadequate to obtain the information APS sought. Thus, it was within the trial court's discretion to deny APS's motion to compel.

Moreover, the trial court's decision was within its discretion for the following additional three reasons: (1) Compelled medical examinations intrude on the injured party's privacy; (2) APS did not provide the trial court with any indication of what it was looking for that could not be determined through less intrusive discovery; and (3) good cause is always required before a court orders an independent medical examination.

17

### 1. Compelled medical examinations intrude on the injured party's privacy.

Plaintiff's right of privacy must be balanced with APS's desire for additional discovery. Texas courts have repeatedly recognized this balance. "Good cause requires a balancing of the competing interests of the party's right of privacy and the movant's right to a fair trial." *In re Bell Hot Shot Co.*, 2014 WL 260116, at *2 (citing *Coates*, 758 S.W.2d at 753); *see also Ten Hagen*, 435 S.W.3d at 866-67) (quoting *In re Buch*, 1998 WL 908843, at *3) ("'When a party's mental or physical condition is implicated, the court must balance the party's right of privacy and the movant's right to a fair trial.'"); *H.E.B. Grocery*, 2015 WL 3637775, at *3 (citing *Coates*, 758 S.W.2d at 753; *In re Click*, 442 S.W.3d at 491) (same).

Despite the well-settled fact that independent medical examinations are intrusive, in its motion to compel, APS makes the erroneous argument that "[a]s the examinations sought by Defendant are not intrusive, invasive, or unnecessarily physically uncomfortable, they should be allowed." MR70. APS continues this erroneous argument in its petition for mandamus by stating that "it is well settled that where the intended examination is not intrusive, invasive or unnecessarily physically uncomfortable, parties are permitted to explore matters not covered by the opposing party's examinations, make their own observations, and attempt to discover facts that may contradict the opinions of the opposing party's expert witnesses." Pet. for Mandamus, P.8.

The only case APS uses to support this contention is once again *Ten Hagen*. *See* MR69-70 (APS relying on *Ten Hagen* to erroneously argue that the requested examinations are not intrusive). While *Ten Hagen* does state that "where the intended examination is not intrusive, invasive or unnecessarily physically uncomfortable, parties are permitted to explore matters not covered by the opposing party's examinations, make their own observations, and attempt to discover facts that may contradict the opinions of the opposing party's expert witnesses," 435 S.W.3d at 870, as mentioned above, the types of examinations requested by APS are intrusive under Texas law. In fact, *Ten Hagen* states that "an order requiring a medical examination is an intrusive order." 435 S.W.3d at 866. Thus, the one sentence in *Ten Hagen* that APS relies on is irrelevant and in no way establishes that the trial court abused its discretion.

Furthermore, APS is requesting not only an IME, but also a functional capacity evaluation which necessarily goes beyond the examination typically included with an IME. A functional capacity evaluation requires an individual to submit to hours or days of physical testing and strenuous activities, almost exclusively for purposes of Workers' Compensation disability determination. APS has failed to give any explanation at all as to why Hewitt, an employee of a non-subscriber to Texas Workers' Compensation, should be compelled to submit to a FCE. App. 1: Pl.'s First Am. Pet., ¶ 9

Additionally, even if there was a conflict in the law in Texas about whether an independent medical examination was intrusive—which there is not—this Court has held that "[a] trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports the trial court's decision." *In re Le*, 335 S.W.3d at 813 (citing *IKB Indus.*, 938 S.W.2d at 445).

In sum, Texas law establishes that independent medical examinations are an invasion of privacy. But even if this Court agrees with APS's argument that the examinations sought are somehow not invasive, at a minimum, the trial court did not abuse its discretion because of the conflict in the law.

### 2. APS did not provide the trial court with any indication of what it was looking for that could not be determined through less intrusive discovery.

Next, APS did not provide the trial court with any details regarding what information could not be obtained by methods other than an independent medical examination. The burden is on APS to establish the record to both the trial court and to this court on mandamus. *See H.E.B. Grocery*, 2015 WL 3637775, at *3 (citing Tex. R. App. P. 52.3(k)(1), 52.7(a); *Walker*, 827 S.W.2d at 837). APS failed to carry its burden.

For example, APS only made the following arguments relating—to use the word loosely—to why its experts needed to examine Plaintiff:

- APS's experts "would be precluded from examining matters not covered by Plaintiff's experts." MR180.

20

- Plaintiff's experts "would have a benefit not afforded Defendant's retained expert and that such benefit would bolster his retained expert's reliability as compared to any controverting expert designated by Defendant." Pet. for Mandamus, 3-4.

- The IME "is needed for Defendant to fairly defend itself against damage claims that Plaintiff intends to prove through its own medical expert who has access to a physical examination." Pet. for Mandamus, 4.

- Dr. Roman will look more credible "[b]ecause—as made clear in his expert disclosure—Plaintiff's medical expert will be telling the jury that his opinions are based upon his own medical examination of Plaintiff—something Defendant's expert will not be able to do if the order is allowed to stand." Pet. for Mandamus, 5.

- And "that 'the information' sought is not simply the opinions of Plaintiff's treating physicians, or even his own retained medical expert. Instead, "the information" sought—needed, in fact—is a first-hand medical examination upon which Defendant's retained expert can base his opinions—just like Plaintiff's retained expert's intends to do." Pet. for Mandamus, 7.

These arguments fail for multiple reasons. First, these are nothing more than conclusory allegations, which are not enough to establish good cause. *Ten Hagen*, 435 S.W.3d at 867 ("these two requirements are not met 'by mere conclusory allegations of the pleadings-nor by mere relevance to the case.'") *Id.* (quoting *Coates*, 758 S.W.2d at 751); *see also Schlagenhauf*, 379 U.S. at 117-18. Second, Dr. Roman's report was not simply based on his physical examination of Mr. Hewitt. Instead, Dr. Roman performed a comprehensive review of Mr. Hewitt's medical records and also used his own training, knowledge, and expertise as it relates to reviewing the medical records. *See* MR18-30. Third, APS's own experts

21

provide no affidavits or any other explanation as to why they cannot base their opinions on the medical records provided—as most defense experts do. Instead, APS merely states for the court that basically, it's just not fair.

Thus, it was within the trial court's discretion to deny APS's motion to compel as APS provided the trial court with nothing more than conclusory allegations.

### 3. Good cause is always required before a court orders an independent medical examination.

Finally, APS's failure to establish that it sought less intrusive discovery before seeking to compel an independent examination is fatal because good cause is always required under Rule 204.1. APS argued in its motion to compel that "[a] Plaintiff in a negligence action who claims physical injury as a result of a Defendant's negligence places his physical injury clearly in controversy and provides the Defendant with good cause to determine the existence and extent of such asserted injury simply by seeking recover for the alleged physical injury." MR68. This is far from true.

For example, in *In re Transwestern Pub. Co.*, 96 S.W.3d at 506, the court held that the designation of an expert was insufficient to meet the good cause requirement under Rule 204.1. Similarly, in *Ten Hagen*, 435 S.W.3d at 862-63—the case APS relies on to make this erroneous argument—the plaintiff designated his treating physician as a medical expert to testify at trial. Despite this, the court

held that the clear language of Rule 204.1 required the movant to also show good cause under the three-part test. *Id.* at 868-70.

Additionally, in *Sherwood Lane Associates v. O'Neill*, 782 S.W.2d 942, 943 (Tex. App.—Houston [1st Dist.] 1990, no writ) the court allowed an independent medical examination precisely because defendants were unable to obtain all of the information necessary through less intrusive means, thus satisfying the third prong. Specifically, the minor plaintiff in *Sherwood* was being treated by two separate psychologists, and during the discovery period, the defendants were unable to obtain the treatment notes of one of the plaintiff's treating physicians and designated experts. The court in *Sherwood* was clear that the opinion was based on the "facts and circumstances" of that case. *Id.* at 945.

The federal courts[2] also recognize that good cause may exist in the following circumstances. First, good cause may exist when the movant can prove that deposing other witnesses would not provide the information sought. *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165 (N.D. Cal. 2013) (holding that good cause existed when defendant could not "depose any of [plaintiff's] treaters in order to ascertain her continuing emotional distress"). Second, good cause may exist when there is a substantial time between the examination and trial. *Sadler v.*

---

[2] As mentioned previously, Texas courts look to the federal courts analyzing Rule 35 because Rule 35 contains the same "good cause" requirement as Rule 2014.1. *See Ten Hagen*, 435 S.W.3d at 868.

*Acker*, 263 F.R.D. 333, 336 (M.D. La. 2009) (holding good cause may be shown when a "'substantial time lag' will occur between the initial examinations . . . and the time of trial"). Third, good cause may exist when the party's health changes significantly. *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 424 (S.D. Tex. 2012) (holding that when the plaintiff experienced "significant changed circumstance [in health] constituting sufficient 'good cause' to warrant an independent eye examination").

In contrast, APS's motion to compel is much more similar to the many cases where courts have held good cause did not exist. For example, in *In re Bell Hot Shot Co.*, a plaintiff submitted to an evaluation related to a brain injury. 2014 WL 260116, at *1. The evaluation indicated that he was not impaired as a result of the accident. *Id.* Yet, the defendant requested that the plaintiff be compelled to undergo another medical examination. *Id.* The court found no abuse of discretion in the trial court's denial of another exam. *Id.* at *2. Specifically, looking at the third element in the *Coates* analysis, the court found that there was already an exam that undermined the plaintiff's claim that he suffers from mental injuries such that there was not good cause for another exam. *Id.*

Additionally, in *Thuesen*, the court held that there was no good cause when the relator did "not establish that discovery from the identified medical professional will be insufficient," and the relator was required "to exhaust less

24

intrusive means of discovery before seeking compulsory mental examinations." 2013 WL 1461790, at *3. *See also Caballero*, 36 S.W.3d at 143 (no good cause when movant did not depose physicians, obtain copies of medical records, and failed to articulate why the further examination would be relevant); *Moore v. Calavar Corp.*, 142 F.R.D. 134, 135-36 (W.D. La. 1992) (holding that defendant failed to show good cause for second examination when no allegations "of a change in the plaintiff's complaints or in the clinical findings," and that while the defendant "is equally entitled to be well prepared to address the issue of the plaintiff's physical condition and need for surgery at trial, there had been no showing to date that a second physical examination . . . would shed any clarifying light upon the dispute"); *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 209 (5th Cir. 1990) (holding that an independent examination was improper because the defendant "already ha[d] the information it seeks . . . without a repetitive examination" when the defendant was supplied with a copy of the test performed by plaintiff's expert, plaintiff's expert's report, and defendant had already deposed plaintiff's expert as well as plaintiff").

APS provided the trial court with no evidence to suggest that even one of these situations is present in this case. In fact, as noted above, many courts have repeatedly held that good cause does not exist when the moving party does not

exhaust less intrusive methods, as APS failed to do here. Thus, it was within the trial court's discretion to deny APS's motion.

> **D.** **APS failed at the trial court level, as well as in their writ for mandamus, to show they are entitled to a functional capacity exam and the trial court's denial of such was an abuse of discretion.**

As noted above, the basis of this mandamus proceeding is APS's request for an IME (by a Doctor retained by the Defendant) coupled with an FCE. It should be noted that in their writ for mandamus, APS fails to fully address that it moved the trial court for an IME and a FCE. Notably, the Courts do not force Plaintiffs to undergo FCE's. APS only addresses issues as to an IME in the appeal, but does not provide case law showing that it is legally entitled to compel a FCE. In fact, at the trial court level the only support provided was a 2011 online article titled "fact sheet" of "occupational therapy's role in functional capacity evaluation." MR 184-85. APS fails throughout its motion to cite any good cause for either examination other than the conclusory allegations of their attorney.

Further, APS cannot single out its request for the IME alone for analysis of an abuse of discretion standard for this mandamus proceeding. This is because the trial court denied APS's request for "physical examinations" which included not only an IME but also an FCE. MR67-70. APS did not file separate motions requesting each of these tests but a single request coupling both exams together as "physical examinations." *Id*. This request, which was denied is the basis of this

mandamus proceeding. The trial Court did not abuse it's discretion for such an overbroad and intrusive examination, without any showing of good cause or the slightest attempt to obtain the information from less intrusive means prior to requesting the Court to compel.

Surely, APS's failure to address half of the relief requested made the basis of this mandamus proceeding cannot be found to be a sufficient showing of an abuse of discretion. Simply put, APS cannot isolate individual parts of its single request made for multiple examinations. Silence as to half of APS's request for an intrusive FCE cannot be held as sufficient in showing an abuse of discretion.

As APS has failed to fully detail that they were legally entitled to a FCE, and that the trial court abused its discretion in denying "physical examinations" requested, which included the requested FCE, the Court should find that APS has failed to meet their heavy burden showing an abuse of discretion has occurred.

### E. Even *Ten Hagen*—the sole case cited by APS in its motion to compel—supports the trial court's decision.

As noted repeatedly in this response, APS only relied on the *Ten Hagen* case in its motion to compel. MR67-70. However, *Ten Hagen* is easily distinguishable. For example, in *Ten Hagen*, the court was provided with evidence that (1) the plaintiff's expert's notes and report were incomplete, 435 S.W.3d at 870; (2) the defense expert "did not feel confident in relying on [the plaintiff's expert's] examination," *Id.*; (3) the plaintiff's expert's report was the first indication of any

sensory loss despite previous examinations, *Id.*; (4) the plaintiff's expert's opinions "did not 'fit together' and were not 'all reasonably considered to be sequella of the motor vehicle collision.'" *Id.*

Additionally, the court noted that "[t]he facts of this case [were] unique" because the defendant "suffered the untimely death of its sole expert witness shortly before the close of the discovery period after the treating physician submitted a report that suggested even he could not confidently assess the full extent of [plaintiff's] future need for additional treatment." *Id.*

The court also noted that the future damages could not be assessed "by simple resort to review of the medical records . . . , examination of the injured appendage during a deposition . . . , or further development of [plaintiff's expert's] opinion during a deposition." *Id.* at 870-71.

Here, none of the evidence listed by the *Ten Hagen* court were present. APS has never provided evidence that Dr. Roman's report was incomplete, that the defense experts were not confident relying on Dr. Roman's report, that Dr. Roman's report listed new injuries not previously addressed, or that Dr. Roman's report "did not fit together." In addition, APS has not shown how the numerous treating Doctors that have treated Plaintiff were incomplete in their own medical records, or that their retained Doctors are not confident in relying on the numerous treating physicians records. Likewise, none of APS's experts have died during this

28

case, and APS has provided no evidence or argument that its experts could not obtain the necessary information through a review of the medical records of treating Doctors or through depositions of the treating Doctors.

Thus, *Ten Hagen*—the only case cited by APS in its motion to compel—supports the trial court's finding that there was no good cause.

## F. Any arguments made regarding Plaintiff's economist Kenneth McCoin are irrelevant and misguided.

Finally, the fact that APS references McCoin's report at all is confusing and irrelevant because McCoin is an economist and never examined Plaintiff to create his report. Thus, any expert hired by APS should not be required to examine Plaintiff to respond to McCoin's report.

Additionally, in *Storms v. Lowe's Home Centers, Inc.*, the court addressed this very issue. 211 F.R.D. 296, 296-97 (W.D. Va. 2002). In *Storms*, the plaintiff was injured while shopping and sought damages for lost wages and earning capacity among other things. *Id.* at 296. To substantiate these claims, the plaintiff "retained an expert vocational rehabilitation counselor to opine on matters related to lost wages and lost earning capacity." *Id.* The retained expert interviewed the plaintiff and reviewed records to issue a report. *Id.* at 296-97. In response, Lowe's hired a vocational expert as well. *Id.* at 297.

The plaintiff provided Lowe's expert with a copy of the report, all of the relevant medical records, as well as all the other discoverable information

requested, but declined to be interviewed by the Lowe's expert. *Id.* Additionally, at the time of the hearing, the plaintiff had not yet been deposed. *Id.*

With these facts in mind, the court held that an additional vocational examination was not appropriate under Rule 35, but went on to state that the defendant had all of the information it needed based on the plaintiff's ability to work in the future. *Id.* at 298. The court reasoned that an additional examination under Rule 35 was not appropriate because the "Plaintiff ha[d] provided Lowe's with a copy of all medical records, a copy of the report from his vocational expert, his tax records, and all other discoverable material requested by Lowe's." *Id.* The court also reasoned that Lowe's still had the opportunity to depose the plaintiff and at the deposition "counsel [would] be able to examine the plaintiff on all matters relating to his functional capacity." *Id.*

*Storms* is instructive here. In fact, unlike the plaintiff's expert in *Storms*, here, McCoin did not physically examine or meet with Mr. Hewitt to formulate economic opinions. Additionally, APS has been provided with all of the same information as the defendant in *Storms*. Thus, any arguments made by APS relating to McCoin's report are irrelevant at best and instead support the trial court's decision to deny APS's motion to compel.

## CONCLUSION

The trial court made the right decision when it denied APS's attempt to compel a medical exam. At a minimum, the trial court acted within its broad discretion and did not act arbitrarily or unreasonably when it made its factual determination that APS did not meet its burden on the good cause requirement to obtain two medical examinations.

## PRAYER FOR RELIEF

The Court should deny APS's Petition for Mandamus, set aside its stay order and allow the trial court to proceed as scheduled. Plaintiff requests all other relief to which he is justly entitled.

Respectfully submitted,

ARNOLD & ITKIN, LLP

By:       */s/ J. Kyle Findley*
          Kurt B. Arnold
          SBN:  24036150
          karnold@arnolditkin.com
          J. Kyle Findley
          SBN:  24076382
          kfindley@arnolditkin.com
          Kala Flittner Sellers
          SBN: 24087519
          ksellers@arnolditkin.com
6009 Memorial Dr.
Houston, TX 77007
(713) 222-3800
(713) 222-3850 (Fax)

***Counsel for Real Party in    Interest,
Tremaine Hewitt***

32

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2015, a true and correct copy of the above and foregoing Response to Petition for Writ of Mandamus was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered, otherwise by email, as follows:

Donald M. Hudgins
Michael D. Hudgins
Steven F. Hudgins
The Hudgins Law Firm, A Professional Corporation
24 Greenway Plaza, Suite 2000
Houston, Texas 77046

Charles A. Sturm
Sturm Law, PLLC
723 Main Street, Suite 330
Houston, Texas 77002

***Attorneys for Relator,***
***Advanced Powder Solutions, Inc.***

Honorable Kyle Carter
125th District Court
Harris County
201 Caroline, 10th Floor
Houston, TX 77002

/s/ *J. Kyle Findley*
J. Kyle Findley

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 8,467 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2)(B).

**APPENDIX**

**TAB   DOCUMENT**

1.      Plaintiff's First Amended Petition

# Tab 1

CAUSE NO. 2014-16020

| | | |
|---|---|---|
| Tremaine Hewitt | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| Advanced Powder Solutions, Inc., | § | |
| Dean Baker, and Martha E. Baker | § | |
| | § | |
| Defendants. | § | 125th JUDICIAL DISTRICT |

## Plaintiff's First Amended Petition

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Tremaine Hewitt, complaining of Advanced Powder Solutions, Inc., Dean Baker, and Martha E. Baker, respectfully showing the Court the following:

### I.
### Nature of Action

1. This is an action arising under the common law of the State of Texas.

### II.
### Discovery

2. Plaintiff intends to conduct discovery under Discovery Level 2 pursuant to TEX. R. CIV. P. 190.3.

### III.
### Jurisdiction and Venue

3. The Court has jurisdiction over this case because Plaintiff seeks damages well within the jurisdictional limits of the Court, and Defendants are citizens of Texas.

4. Venue is proper in Harris County because a substantial part of the events or omissions underlying Plaintiffs' claims occurred in Harris County. *See* TEX. CIV. PRAC. &

REM. CODE 15.002(a)(1). Further Defendants reside in Harris County. TEX. CIV. PRAC. & REM. CODE 15.002(a)(2).

## IV.
## Parties

5.      Plaintiff is a resident of Texas.

6.      Defendant, Advanced Powder Solutions, Inc. is a Texas company that has made an appearance in this case.

7.      Defendant, Dean Baker, is a Texas citizen and may be served through personal delivery to 14102 Halprin Creek Drive, Cypress, TX, or wherever he may be found.

8.      Defendant, Martha E. Baker, is a Texas citizen and may be served through personal delivery to 14102 Halprin Creek Drive, Cypress, TX, or wherever she may be found.

## V.
## Facts

9.      On or about August 28, 2013, Plaintiff was employed by Advanced Powder Solutions, Inc. ("APS"), a non-subscriber to Texas Workers' Compensation. Plaintiff was working at APS's facility in front of a reactor on a ladder when a co-worker began manipulating valves on the reactor. This caused a blast and caused Plaintiff to fall off the ladder and into a fire. Plaintiff suffered severe burns and orthopedic injuries as a result. Plaintiff had to be life-flighted from the scene, and has already undergone multiple surgeries.

## VI.
## Causes of Action

## Negligence and Gross Negligence

10.     Plaintiff repeats and realleges each allegation contained above.

11. Plaintiff sustained serious injuries because of Defendants' negligence and gross negligence evidenced by Defendants':

- Failure to properly train its employees;

- Failure to properly supervise its employees;

- Use of the reactor;

- Failure to have safe policies and procedures for the work Plaintiff was doing when he suffered injuries;

- Failure to provide a safe work place;

- Other acts deemed negligent and grossly negligent.

12. As a result of Defendants' negligence and gross negligence, Plaintiff suffered severe physical injuries. Plaintiff is entitled to recover damages for his injuries. Defendants' actions were done with a reckless disregard to a substantial risk of severe bodily injury. As such, Plaintiff is entitled to exemplary damages.

**VII.**
**Joint and/or Vicarious Liability**

13. Plaintiff repeats and realleges each allegation contained above.

14. For the following reasons based on information and belief, Defendant APS's corporate form should be disregarded to hold Defendants Dean Baker and Martha E. Baker vicariously or jointly liable to Plaintiff for APS's wrongful conduct:

a. APS is a mere sham, organized and operated by Dean Baker and Martha E. Baker in their individual capacity to perpetrate fraud upon Plaintiff and potentially other unsuspecting persons. Defendants made material representations to Plaintiff that were false when made and which Defendants knew were false or made recklessly, and/or

3

Defendants had a duty to disclose but failed to disclose material facts to Plaintiff, knowing Plaintiff did not know and did not have an equal opportunity to discover those facts. Specifically, Defendants made misrepresentations and/or omissions about APS's corporate structure and finances and made these material misrepresentations and/or omissions with the intent to induce Plaintiff to delay in asserting his negligence and gross negligence causes of action against Dean Baker and Martha E. Baker, individually. Plaintiff relied to his detriment on those misrepresentations and/or omissions.

b. Dean Baker and Martha E. Baker are each the "alter ego" of APS and APS was and is organized and operated as a mere tool and/or business conduit for the Baker Defendants' personal benefit and advantage. Dean Baker and Martha E. Baker, individually, have at all times exercised total dominion and control over APS, and have exercised such control in a manner indistinguishable from his and her own personal affairs. Dean Baker and Martha E. Baker were the first and, Plaintiff believes, the only directors of APS. Dean Baker and Martha E. Baker own a majority of the stocks issued and have maintained complete corporate ownership. Dean Baker and Martha E. Baker have also commingled their personal funds with corporate funds and have paid corporate debts with personal checks.

c. Dean Baker and Martha E. Baker are using APS's corporate fiction as a means of evading an existing legal obligation, namely, civil liability for negligence and gross negligence that injured Plaintiff and caused Plaintiff to incur damages.

d. Dean Baker, individually, intentionally operated and continues to operate APS with inadequate capitalization. Specifically, APS operates its business with insufficient assets to satisfy potential debts and liabilities associated with running its business. Because Dean Baker operated and continues to operate APS with inadequate

4

capitalization, equity dictates that Dean Baker, in his individual capacity, be held vicariously liable to Plaintiff for all of his damages alleged herein.

## VIII.
### Statute of Limitations

15.    Plaintiff repeats and realleges each allegation contained above.

16.    If Defendants assert statute of limitations as an affirmative defense to any of the causes of action asserted above, the affirmative defense fails for one or more of the following reasons:

17.    The applicable statute of limitations was tolled because Defendants fraudulently concealed facts pertaining to the true identities of the Defendants.  Through no fault of Plaintiff's, Defendants withheld documents evidencing APS's corporate structure, financial information, and undercapitalization until this month, September 2015, which was about eight months after Plaintiff's most recent discovery request and only a few weeks after the two-year anniversary of the accident giving rise to this lawsuit.  Defendants made material representations to Plaintiff that were false when made and which Defendants knew were false or made recklessly, and/or Defendants had a duty to disclose but failed to disclose material facts to Plaintiff, knowing Plaintiff did not know and did not have an equal opportunity to discover those facts.  Defendants made these material misrepresentations and/or omissions with the intent to induce Plaintiff to delay in asserting his negligence and gross negligence causes of action against Dean Baker and Martha E. Baker, individually. Defendants had actual knowledge of their misconduct yet actively suppressed the truth to conceal it.  Plaintiff exercised reasonable diligence to discover the information Defendants were concealing by seeking such information through his discovery requests in this lawsuit.

5

Plaintiff reasonably relied on Defendants' misrepresentations and/or omissions to his detriment.

18.     The applicable statute of limitations against Dean Baker and Martha E. Baker was tolled as of the date Plaintiff filed suit against APS because Dean Baker and Martha E. Baker are the alter ego of APS and are vicariously liable defendants.

19.     The applicable statute of limitations was tolled for any and all periods of time that Dean Baker and/or Martha E. Baker were absent from the State of Texas.  Upon information and belief, Dean Baker and Martha E. Baker were absent from the state for a sufficient period of time during the limitations period to preclude any defense based on statute of limitations.

20.     Defendants are equitably estopped from asserting a limitations defense to any of Plaintiff's claims because Defendants, acting with actual or constructive knowledge of the facts regarding APS's corporate structure and finances, materially misrepresented those facts to Plaintiff and/or concealed those facts from Plaintiff with the intent to induce Plaintiff to rely on Defendants' material misrepresentations and/or omissions and delay in filing suit against Dean Baker and Martha E. Baker, individually.  Plaintiff neither had knowledge of the truth nor means of obtaining knowledge of the truth, and he relied on Defendants' material misrepresentations and/or omissions to his detriment.

## IX.
## Prayer

21.     Plaintiff prays for relief and judgment as follows:

    a.  Compensatory damages against each Defendant;

    b.  Actual damages, such as past and future economic damages, past and future medical bills, past and future pain and suffering, past and future

impairment, past and future disfigurement, past and future mental anguish;

c.    Consequential damages;

d.    Exemplary damages;

e.    Interest on damages (pre- and post-judgment) in accordance with law;

f.    Such other and further relief as the Court may deem just and proper;

g.    Attorneys' fees.

Respectfully Submitted,

ARNOLD & ITKIN LLP

*/s/ Kurt Arnold*

_____

Kurt B. Arnold
SBN:  24036150
karnold@arnolditkin.com
J. Kyle Findley
SBN:  24076382
kfindley@arnolditkin.com
Kala F. Sellers
SBN:  24087519
ksellers@arnolditkin.com
6009 Memorial Drive
Houston, Texas  77007
Tel: 713.222.3800
Fax: 713.222.3850
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFF**

7

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record in accordance with the Texas Rules of Civil Procedure on this 28th day of September, 2015.

Steven F. Hudgins
The Hudgins Law Firm, A Professional Corporation
24 Greenway Plaza, Suite 2000
Houston, Texas 77046

***Counsel for Defendant***
***Advanced Powder Solutions, Inc.***

_/s/ Kyle Findley_
J. Kyle Findley